UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:11-CV-00576-R

GWEN DEATS                                                                                          PLAINTIFF

v.

IUE-CWA, the Industrial Division of the
Communication Workers of America, ALF-CIO, et al.                     DEFENDANTS

## MEMORANDUM AND ORDER

Before the Court are three motions to dismiss by two of the Defendants (DN 7; DN 15; DN 27).  Plaintiff has responded to each of these motions (DN 13; DN 19; DN 28), Defendants have replied (DN 17; DN 31), and Plaintiff has submitted additional briefing (DN 21).  These motions are now ripe for adjudication.  Below, the Court issues its rulings.

## BACKGROUND

This matter concerns the termination of Plaintiff Gwen Deats ("Deats") from Appliance Park, a facility owned and operated by the General Electric Company ("GE") in Louisville, Kentucky.  Employees at Appliance Park are unionized and have a collective bargaining agreement ("CBA") with GE.  Defendant Local 761-Affiliated GE-IUE/CWA AFL-CIO and CLC ("Local 761") is the union that directly represents employees like Deats at Appliance Park.  Defendant IUE-CWA, the Industrial Divisions of the Communications Workers of America, AFL-CIO ("IUE-CWA") is the international union affiliated with Local 761 and others like it throughout the country.  IUE-CWA is a separate and distinct organization from Local 761.

The relevant facts are as follows.  On or about November 16, 2010, management at Appliance Park terminated Deats for vandalizing a fellow employee's automobile in the company's parking lot.  Video tape evidence exists of the incident but the parties dispute the

1

clarity and implications of the recording. Deats denies that he vandalized the automobile in question.

The grievance process for employees at Appliance Park is described under Article VIII of the CBA. It contains three steps for protesting a disciplinary decision by GE management, such as an employee's termination. CBA, DN 7-2, p. 3-19. For the first step ("Step One"), the union or the affected employee files a grievance with the employee's foreman or supervisor at Appliance Park. CBA, DN 7-2, p. 4. If the foreman upholds the termination, the employee or union may proceed to step two ("Step Two"), where a discussion about the grievance is held between higher-level union officials and upper management at Appliance Park. CBA, DN 7-2, p. 4-5. Grievances referred to Step Two must be disposed of within 45 days. The third step ("Step Three") contemplates referral of the grievance to the national officers of the union for submission to GE's executive officer or his designated representative. CBA, DN 7-2, p. 6. Grievances for Step Three must be submitted to GE not more than three months after the completion of Step Two. CBA, DN 7-2, p. 6. After Step Three, if the discipline has not been reversed, Article XV of the CBA permits the matter to be arbitrated. CBA, DN 7-2, p. 8-19. Either GE or Local 761 may ask for arbitration, but the request must be filed within 60 days of the final ruling by management. CBA, DN 7-2, p. 8.

On November 23, 2010, Local 761 filed a grievance protesting Deats' termination pursuant to Step One. DN 7-3, p. 2. GE answered the grievance the same day, stating that the termination was proper. DN 7-3, p. 2. On December 8, 2010, union officials and management met with GE management at Appliance Park in accordance with Step Two. GE upheld Deats' termination and the parties forwarded the dispute on to Step Three. DN 7-4, p. 2. Review at

Step Three yielded identical results. DN 7-5, p. 2. The final decision by GE was issued on January 27, 2011.

On February 14, 2011, the chief stewards, president, and vice president of Local 761 met to discuss Deats' grievance and whether it should proceed to arbitration. The president of Local 761, Jerry Carney, affirms that the group unanimously voted to forgo arbitration because of "proof difficulties and the fact that there was a video which was damaging to Mr. Deats' case." Carney Aff., DN 7-7 ¶¶ 10-11. Carney states that in lieu of arbitration, the grievance was placed on the "strike notice," which permitted the local union to informally negotiate with management at Appliance Park. Carney Aff., DN 7-7 ¶ 12.

The same day, Carney and other union officials met with Deats to discuss the status of his grievance. The group informed Deats about the decision not to pursue his matter to arbitration. Carney Aff., DN 7-7 ¶¶ 13-14. Other union officials present for the February 14 meeting have submitted similar affidavits asserting Deats was present and understood his grievance would not proceed to arbitration. Wachter Aff., DN 7-8 ¶¶ 5-8; Sweatt Aff., DN 7-9 ¶¶ 5-7; Strucker Aff., DN 17-3 ¶¶ 2-5; Henley Aff., DN 17-4 ¶¶ 6-9. In the following weeks and months, Carney says Deats made intermittent inquiries about his grievance but insists Deats was fully aware of the disposal of his matter. Carney Aff., DN 7-7 ¶¶ 14-18.

Deats refutes the narrative promoted by the union officials for Local 761. He declares he remained ignorant of the union's decision not arbitrate his grievance until April 24, 2011. Complaint, DN 1 ¶ 6; Deats Aff., DN 13-1 ¶ 31. He says that the officials are incorrect about his presence at the February 14 meeting. Deats Aff., DN 13-1 ¶¶ 19-21. He also avers that his grievance did not advance beyond Step Three because the leadership for Local 761 disliked him. Deats Aff., DN 13-1 ¶¶ 22-24.

Deats brought suit on October 17, 2011, against Local 761, IUE-CWA, and GE. He claims GE wrongfully terminated him, and Local 761 and IUE-CWA failed to fairly represent him as a member of the labor organizations, in violation of § 301 of the Labor Management Relations Act ("LMRA"). *See* 29 U.S.C. § 185(c). Deats asserts he had a meritorious grievance and both Local 761 and IUE-CWA breached their duties to represent him when the organizations decided against arbitration. Local 761 and IUE-CWA have each moved to dismiss. Local 761 asserts this suit is untimely because Deats was required to sue within 60 days of the February 14 meeting. IUE-CWA moves to dismiss because the complaint does not contain a cognizable claim against the organization. The Court addresses each of these motions in turn.

## STANDARD

Attached to the motions to dismiss and the corresponding responses are a number of documentary exhibits and affidavits. Most are not referenced or alluded to in Deats' complaint.[1] Generally, if matters outside the pleadings are presented to the court on a motion to dismiss under Rule 12(b)(6), then the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). The Court has considered the assorted exhibits offered by the parties and will convert these motions to dismiss under Rule 12(b)(6) to ones for summary judgment under Rule 56.

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and

---

[1] While several of these documents are referred to in the complaint, the parties rely heavily on the affidavits of individuals associated with Local 761 and IUE-CWA. DN 7-7; DN 7-8; DN 7-9; DN 13-11; DN 28-4; DN 31-1. Because the Court has used these documents to reach its conclusions, it uses the Rule 56 standard for the present motions.

4

draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

### I.  Motion by Local 761

Local 761 states two bases for dismissal. First, it asserts Deats' lawsuit was untimely, as it was filed more than six months after the union's breach of its duty of representation. Second, Local 761 says that even if the factual allegations contained in the complaint are true, they are inadequate to state a plausible claim for relief under § 301 of the LMRA. Deats responds that material facts exist with regard to the statute-of-limitations issue and that his complaint includes a cognizable legal claim.

Suits under § 301 of the LMRA have a six-month statute of limitations. *Wilson v. Int'l Bhd. of Teamsters,* 83 F.3d 747, 757 (6th Cir. 1996) (citations omitted). "Such a claim accrues

when an employee discovers, or should have discovered with exercise of due diligence, acts giving rise to the cause of action." *Id*. (citing *Chrysler Workers Ass'n v. Chrysler Corp.,* 834 F.2d 573, 578 (6th Cir. 1987)). "[A] party is not required to sue on a hybrid claim until the arbitration panel renders its final decision, or until the party reasonably should know that the union has abandoned the party's claim." *Id*. (citing *Schoonover v. Consolidated Freightways Corp.,* 49 F.3d 219, 221-22 (6th Cir. 1995)).

Local 761 highlights two dates it believes are dispositive on the timeliness issue: February 14, 2011 and March 28, 2011. The union contends Deats learned his grievance would not be arbitrated during the meeting with the organization's leadership on February 14, 2011. Judging this as the date of accrual, the lawsuit should have been filed no later than August 14, 2011. Local 761 continues that under the CBA, an arbitration claim must be filed within 60 days of an unfavorable Step-Three ruling. CBA, DN 7-2 p. 8. It argues that Deats should have known of this limitation, and when the 60 days came and went on March 28, 2011, his claim under § 301 accrued. Even this later date results in an elapsed limitations period before Deats filed suit.

Deats' intransigence on the date he learned about the arbitration decision prevents dismissal for untimeliness. Though Local 761 has presented five affidavits confirming Deats' presence at the February 14 meeting, Deats adamantly denies these declarations. He expresses in his complaint and affidavit that he did not learn of the decision to forgo arbitration until April 24, 2011. As the Court cannot take sides in this swearing contest and Deats' version creates a satisfactory date-of-filing, summary judgment on the statute of limitations is unwarranted. *See Downey v. United Food & Commercial Workers Union Local 1262*, 946 F. Supp. 1141, 1152-53 (D.N.J. 1996) (two opposing stories on when employee learned of the union's wrongdoing precludes dismissal on the statute of limitations).

Local 761's second basis for dismissal is improper as well. Section 301 of the LMRA requires an employee to show "'conduct toward a member of the collective bargaining unit [that] is arbitrary, discriminatory, or in bad faith.'" *White v. Detroit Edison Co.,* 472 F.3d 420, 426 (6th Cir. 2006) (quoting *Vaca v. Sipes,* 386 U.S. 171, 190-91 (1967)). Though a union may not abandon a meritorious grievance, nor does an employee have "'an absolute right to have his grievance taken to arbitration.'" *Id*.

Taking the current record in the light most favorable to Deats, summary judgment at this stage is improper. Deats denies he vandalized the vehicle in question and claims the video image the union relied upon does not corroborate GE's reasons for termination. Assuming the accuracy of these statements, the decision not to arbitrate would be actionable under § 301. With the infancy of the factual record, the Court cannot foreclose the possibility of a ruling in Deats' favor.

Ultimately, Local 761's motion to dismiss is premature. Concurrently with this order, the Court will set a telephonic conference to establish a discovery schedule for the parties.

  **II.  Motion by IUE-CWA**

Judging by his initial pleading, Deats' principal complaint with IUE-CWA is the organization's decision not to push his grievance to arbitration. *See* Complaint, DN 1 ¶¶ 6-7, 10. In his response to IUE-CWA's motion to dismiss, Deats cites to the affidavit by Carney as evidence that Local 761 and IUE-CWA "collectively refused to pursue [his] grievance to arbitration." Deats Response, DN 28 p. 7. He also refers to a correspondence between Robert Santamoor, the chairman of the IUE-CWA, and Carney discussing the grievance process of Gary Lowe, another employee at Appliance Park who was terminated for vandalizing a co-worker's vehicle as well. DN 28-5. Lowe's case was initially taken to arbitration but the leadership of

IUE-CWA reversed that decision and abandoned the claim. DN 28-5. Deats contends Santamoor's letter and Carney's affidavit are evidence that IUE-CWA assists in deciding what grievances to pursue to arbitration and what claims to terminate after Step Three.

IUE-CWA refutes these characterizations. IUE-CWA underscores that although it retains certain regulatory and supervisory powers over affiliated unions, Local 761 is a separate entity with differing responsibilities, membership, and business affairs. IUE-CWA points out that Carney is not its representative or agent and his decisions regarding grievances and arbitration cannot be imputed to IUE-CWA. The organization contests that it had any involvement with the management of Deats' grievance or the decision to abandon arbitration. Further, it argues that Deats has formulaically placed the organization's name in many of the complaint's allegations without any evidence of its connection to the present controversy.

The law is clear that IUE-CWA may not be held accountable for Local 761's action by virtue of the loose affiliation between the two organizations. *See Carbon Fuel Co. v. United Mine Workers of Am.*, 444 U.S. 212 (1979). A cogent explanation of the policy underpinning this principle is offered in *Small v. IBEW*, 626 F. Supp. 96 (S.D. Ohio 1985):

> It has long been held that an international union is not *per se* responsible for the actions of its local. An important policy militates strongly against imposing absolute vicarious liability on international labor organizations. Every year, many cases involve breach of the union's duty to represent fairly members of the bargaining unit. A rule of absolute vicarious liability would expose international unions to a multiplicity of damage awards and have an unpredictably destructive effect on organized labor. In a long line of cases, this Circuit has refused to hold international unions vicariously liable to employers without a showing of authorization or ratification.

*Id.* at 98 (citations omitted). Without a showing of an agency relationship or that an exceptional and direct involvement existed between Local 761 and IUE-CWA, a claim by Deats will not lie

against IUE-CWA. *See Carbon Fuel*, 444 U.S. at 212; *Melvin v. Local Union No. 436, Intern. Broth. of Teamsters*, 779 F.2d 51 (6th Cir. 1985) (table).

Deats responds to this precedent with the contention that IUE-CWA was directly involved with the decision not to arbitrate his claim. He cites to Carney's affidavit and the governing documents of Local 761 as evidence that IUE-CWA directs the grievance and arbitration process at Appliance Park. Because Deats has either misconstrued or misstated the evidentiary record, this argument falls flat.

The complaint includes one specific factual allegation regarding IUE-CWA - that Carney is the representative of the organization. Complaint, DN 1 ¶ 4. This is patently false. Carney's own affidavit states unequivocally that he is the President of Local 761 and makes no mention of representing the interests of IUE-CWA. Deats has produced nothing to the contrary, nor does he state a period of discovery would turn up evidence to corroborate this allegation. In addition, the record is without any indication that IUE-CWA and Local 761 "collectively" refused to arbitrate Deats' grievance. The affidavits from Carney and the other officials from Local 761 do not insinuate that the two labor organizations collaborated on his grievance. The sworn statements in the record indicate IUE-CWA played no role when Local 761's officers voted against arbitration. *See* Carney Aff., DN 7-7 ¶¶ 10-11; Wachter Aff., DN 7-8 ¶¶ 3-4; Sweatt Aff., DN 7-9 ¶ 5.

In his response to the motion to dismiss, Deats tries to make hay out of IUE-CWA's connection to Step Three in the CBA's grievance process. According to the CBA, a grievance that is not favorably adjudicated in Step Two may be "referred to the National Offices of the Union for submission to an Executive Officer of the Company." CBA, DN 7-2 p. 6. Deats proclaims the passage is affirmative proof that members of IUE-CWA are entrenched in the

9

grievance and arbitration process. This rationale fails as well. The allegations in Deats' complaint focus on arbitration, not the grievance process. Complaint, DN 1 ¶ 10. The grievance and arbitration procedures are separate and distinct, as each is discussed in different sections of the CBA. The passages outlining arbitration never reference the IUE-CWA. CBA, DN 7-2 p. 8. Thus, the CBA's structure and plain language vitiate Deats' arguments that IUE-CWA is somehow responsible for the decision not to arbitrate.

Perhaps the most persuasive document Deats introduces of IUE-CWA's influence over the arbitration process is the letter between Santamoor, the chairman of the IUE-CWA, and Carney. Deats says the letter exhibits how IUE-CWA controls grievances from the local level to arbitration. His reliance on the correspondence is misplaced. On closer examination, the letter in no way signals that members of IUE-CWA were involved in submitting grievances to arbitration. DN 28-5 at 1. Rather, the power that Santamoor is exercising in the letter is the ability to ferret out undeserving arbitration claims *after* the local unions have voted and passed them along to IUE-CWA. The document does not support the inference that the leadership of IUE-CWA participates in selecting the grievances to submit to arbitration.

The evidence cited by both parties, including the affidavits, the CBA, and Santamoor's letter, presents a coherent picture of IUE-CWA's responsibility with respect to the arbitration of employee grievances. There is no indication the labor organization played any role when members of Local 761 voted against pursuing Deats' matter to arbitration. Since this is the sole basis for the present lawsuit, the unsupported allegations of the complaint are an insufficient foundation to support the claim against IUE-CWA. The Court will grant IUE-CWA's motion to dismiss.

## CONCLUSION

IT IS HEREBY ORDERED:

(1) Defendant Local 761-Affiliated GE-IUE/CWA AFL-CIO and CLC's motion to dismiss for failure to state a claim (DN 7) is DENIED.  **A telephonic conference is scheduled for Friday, June 29, 2012 at 9:30 A.M. ET.**  The Court shall initiate the call.

(2) Defendant IUE-CWA, the Industrial Divisions of the Communications Workers of America, AFL-CIO's motion to dismiss for failure to state a claim (DN 27) is GRANTED.  The Clerk of Court is directed to strike this Defendant as a party.

(3) Defendant IUE-CWA, the Industrial Divisions of the Communications Workers of America, AFL-CIO's motion to dismiss for improper service (DN 15) is DENIED as moot.