UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:11-CV-00576-TBR

GWEN DEATS          Plaintiff

v.

IUE-CWA, THE INDUSTRIAL DIVISION OF THE          Defendants
COMMUNICATION WORKERS OF AMERICA,
AFL-CIO, *et al.*

## MEMORANDUM OPINION

This matter is before the Court upon Defendant General Electric Company and Defendant IUE-CWA, Local 83761's respective Motions for Summary Judgment.[1] (Docket Nos. 50 & 51, respectively.) Plaintiff Gwen Deats has responded in opposition, (Docket No. 52,) and Defendant GE has replied, (Docket No. 73). Defendant IUE-CWA, Local 83761 has not replied, and the time to do so has now passed. This matter is now ripe for adjudication. For the following reasons, the Court will GRANT the Defendants' respective Motions for Summary Judgment.

---

[1] In its Motion for Summary Judgment, the Union includes a final section titled "Reconsider Motion to Dismiss on Timeliness." (Docket No. 51-1, at 9.) This two-paragraph section requests that "the Court reconsider the Motion to Dismiss for untimely filing which is at Exhibit 7." (Docket No. 51-1, at 9.) Presumably, the Union means to refer to its Motion to Dismiss at "Docket No. 7," given that there is no "Exhibit 7" to its Motion for Summary Judgment nor is any motion to dismiss attached thereto. This motion will be DENIED as moot in light of the Court's ruling on the Union's Motion for Summary Judgment. Therefore, although the Union's motion to reconsider need not be addressed further, the Court nonetheless notes that even if summary judgment in the Union's favor were not appropriate, the Union's motion to reconsider would still be denied because the Union makes no viable argument for relief under either Fed. R. Civ. P. 59(e) or 60(b). *See, e.g.*, *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) ("Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice.").

BACKGROUND

Plaintiff Gwen Deats began working for Defendant General Electric Company (GE) at its Appliance Park location in Louisville, Kentucky, in 2005. At all times pertinent, GE had entered into and was operating under a collective bargaining agreement (CBA) with the IUE-CWA, the Industrial Division of the Communication Workers of America, AFL-CIO, acting for itself and on behalf of the Local 83761 (the "Union"). In November 2010, GE terminated Deats' employment for an alleged violation of GE company policy. GE indicated its decision to terminate Deats was based on a surveillance video that purported to show Deats damaging the vehicle of another GE employee, Gary Lowe, by "keying" Lowe's vehicle as he walked by it in the GE parking lot.

Deats and Lowe did not get along. In or around October 2010, Deats received reports that someone had posted derogatory graffiti about him in one of GE's restrooms. Deats testified in his deposition that he suspected "Lowe might have been the one behind it." (Docket No. 50-2, at 15.) On October 26, Deats clocked out around 10:40 a.m. and entered the GE parking lot. What happened in the parking lot remains a matter of contention among the parties. A security camera recorded Deats as he walked through the parking lot. Defendants contend that the video shows Deats taking a "zigzagging" and "haphazard" path, appearing to go purposefully out of his way to walk past Lowe's vehicle, and then extending his arm toward Lowe's vehicle as he walked past. Deats does not dispute that it is he in the recording; however, he maintains that he did not damage the vehicle. According to Deats, the video's image is so indistinct that it does not show anything other than him walking through the parking lot and thus could not have established a reliable basis for his termination. Deats further insists that there is no

evidence showing that Lowe's vehicle is actually depicted in the video or that he knew which vehicle was Lowe's or where Lowe's vehicle was parked.

Several days after the video was recorded, Lowe reported to Mark Marzano, an operations manager at GE, that Lowe's vehicle had been keyed. GE then initiated an investigation, which included reviewing the parking lot security footage. Based on this investigation, GE believed Deats was responsible for keying Lowe's vehicle. A meeting was held in which Deats, the Union's chief steward, and several GE managers viewed the video. Thereafter, the video was again reviewed by GE management and Deats, along with the Union's president, Jerry Carney. As a result of its investigation, GE terminated Deats.

On November 23, 2010, the Union initiated a grievance proceeding to challenge and reverse Deats' termination. GE denied that grievance, maintaining that Deats' termination was proper. The Union initiated the second step of the grievance process on December 8, 2010. At this step, Carney became involved and met with GE management on Deats' behalf. GE again denied Deats' grievance, relying on the results of its investigation. The Union then initiated the third step of the grievance process, which required the Union's parent entity to negotiate directly with members of GE's management team. GE denied Deats' grievance again at this third step. Upon completing each of these steps, the Union had three possible options: (1) request arbitration pursuant to the CBA, (2) put Deats' grievance up for strike notice, or (3) do nothing. The Union's negotiating committee, which was comprised of Carney and the Union's chief stewards, held a meeting on February 14, 2011, to decide whether to arbitrate. The committee decided not to arbitrate Deats' termination and instead put his grievance up for strike notice. Deats then filed suit in October 2011.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of her position; she must present evidence on which the trier of fact could reasonably find for her. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Still, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

DISCUSSION

Deats asserts a "hybrid" claim under Section 301 of the Labor and Management Relations Act (LMRA), 29 U.S.C. § 185, against GE and the Union. To recover on a Section 301 claim, Deats must prove both (1) that GE's actions violated the terms of the CBA, and (2) that the Union breached its duty of fair representation. *Summers v. Keebler Co.*, 133 F. App'x 249, 251 (6th Cir. 2005) (citing *DelCostello v. Teamsters*, 462 U.S. 151, 164-65 (1983)). "The 'interdependency' of a union employee's claims against his employer for breach of a collective bargaining agreement and against his union for breach of its duty of fair representation is well-established in this Circuit." *Husen v. Dow Chem. Co.*, 2006 WL 901210, at *9 (E.D. Mich. Mar. 31, 2009) (quoting *Millner v. DTE Energy Co.*, 285 F. Supp. 2d 950, 960-61 (E.D. Mich. 2003)). "[I]f the first claim anchored in the employer's alleged breach of the collective bargaining agreement fails, then the breach of duty of fair representation claim against the union must necessarily fail with it." *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990); *cf. Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 220 (E.D. Mich. 1990) ("Since plaintiff's count as to the duty of fair representation fails, plaintiff's other count alleging a breach of the CBA also must fail."), *aff'd* 929 F.2d 701 (6th Cir. 1991).

GE and the Union separately move for summary judgment on Deats' respective claims against them.

**I.    Deats' Claim Against GE for Breach of the CBA**

Deats claims that GE breached the terms of the CBA by terminating him without "just cause" as required by that agreement. GE maintains that it had an honest belief that Deats damaged another employee's property. GE further asserts that it did not breach the

terms of the CBA and argues that Deats has failed to come forward with substantive evidence to support that allegation.

GE's Rules of Conduct provide that "defacing or deliberately damaging . . . the property of others" is considered a "serious offense," which "will result in time-off and if considered serious enough in the judgment of management, could result in discharge on the first offense." (Docket No. 50-8.) GE informed Deats of its decision to terminate him by letter dated November 16, 2010. (Docket No. 50-10.) In that letter, GE stated that its decision was based on investigation regarding Deats' violation of these rules, "specifically acts of defacing and damaging the property of others." (Docket No. 50-10, at 2.)

The Sixth Circuit has adopted an "honest belief" rule with regard to an employer's proffered basis for an adverse employment action. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001); *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001). Under that rule, as long as an employer has an honest belief in its proffered reason for terminating an employee, "the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski*, 274 F.3d at 1117 (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 808 (6th Cir. 1998)). "An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied 'on the particularized facts that were before it at the time the decision was made.'" *Id.* (citing *Smith*, 155 F.3d at 807). In *Smith v. Chrysler Corp.*, the Sixth Circuit elaborated on the question whether "reasonable reliance" was present:

> In deciding whether an employer reasonably relied on the particularized facts before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse action.

155 F.3d at 807. Accordingly, an employee "must allege more than a dispute over the facts upon which his discharge was based." *Braithwaite*, 258 F.3d at 494. "He must put forth evidence which demonstrates that the employer did not 'honestly believe'" in its proffered basis for taking adverse action against the employee. *Id.* (referencing *Smith*, 155 F.3d at 806-07).

GE insists that it had an honest belief that Deats was responsible for damaging another employee's property—its proffered reason for his termination—and that the decision to terminate Deats was reasonably informed and considered based on the particularized facts before it. GE cites Lowe's derogatory graffiti, which was targeted at Deats, as evidence of motive. GE also points to the fact that Deats does not deny that it is he in the surveillance footage. In addition to establishing that Deats had opportunity and motive, GE has come forward with deposition testimony in which several members of GE management testified that, upon viewing the surveillance footage, "it looks like [Deats] walks by and raises his arm out and does something to the vehicle," (Docket No. 73-1), and that in that footage they observed "Gwen [Deats] going out the turnstile, zigzagging through the parking lot through cars, and then . . . [y]ou see the arm in the video making a motion along the side of the car," (Docket No. 73-3).

In response, Deats argues that he has established a genuine factual dispute whether GE in fact made a reasonably informed and considered decision such that a jury should decide whether GE had just cause to terminate him. Specifically, Deats reasons that GE's basis for terminating him, the surveillance video and GE's investigation, "simply does not conclusively establish that GE discharged [him] based on the 'honest belief' that he keyed Lowe's vehicle." (Docket No. 52, at 14.) Deats asserts that he has "set forth pages upon

pages of evidence which puts into controversy whether GE's 'investigation' was 'thorough' or 'credible' and whether its reliance on the video as a basis of discharging Deats was reasonable." (Docket No. 52, at 17.)

But much of Deats' argument why a genuine factual dispute exists misses the focus of this Court's inquiry. As the Sixth Circuit stated in *Braithwaite v. Timken Co.*: "[T]he plaintiff must allege more than a dispute over the facts upon which his discharge is based. He must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered [basis] for its adverse employment action." 258 F.3d at 493-94 (referencing *Smith*, 155 F.3d at 806-07). In effect, Deats offers little more than a challenge to the sufficiency of GE's evidence against him—namely, that the surveillance video is unclear—and speculation that vehicle depicted in that footage might not be Lowe's or that Lowe's vehicle might not have actually been damaged. This Court's role, however, is not to examine the correctness or thoroughness of GE's decision. *See Majewski*, 274 F.3d at 1117; *Smith*, 155 F.3d at 807. Moreover, Deats cannot maintain a viable claim that GE breached the terms of the CBA premised merely upon some dispute over the facts underlying GE's decision to terminate him. In this regard, a genuine factual dispute over the facts relied upon by GE simply does not equate to a genuine factual dispute whether GE reasonably relied on those facts.

Accordingly, the Court concludes that Deats has put forth no evidence tending to show that GE did not honestly believe its proffered reason for terminating him. Because the Court finds no genuine issue of material fact whether GE had an honest belief in its proffered reason for terminating Deats' employment, it follows that no genuine issue of material fact exists whether GE breached the terms of CBA by terminating Deats without

just cause.  Therefore, the Court will GRANT summary judgment in favor of GE on Deats' claim against it for breach of the CBA.[2]

## II. Deats' Claim Against the Union for Breach of the Duty of Fair Representation

Deats also claims that the Union breached its duty of fair representation.  The Union maintains that it properly pursued Deats' case through each of the three steps of the grievance process and that the decision not to seek arbitration was within its discretion.  In order to prove a breach of the duty of fair representation, Deats must show that the Union's actions were either (1) arbitrary, (2) discriminatory, or (3) in bad faith.  *Garrison v. Cassens Transport Co.*, 334 F.3d 528, 538 (6th Cir. 2003) (citing *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)).  The Sixth Circuit advises that when reviewing a union's actions, courts "must never lose sight of the fact that union agents are not lawyers, and as a general proposition, cannot be held to the same standard as that of licensed professionals." *Garrison*, 334 F.3d at 539; *see also Schoonover v. Consol. Freightways Corp.*, 147 F.3d 492, 497 (6th Cir. 1998) (Kennedy, J., dissenting) ("[U]nion representatives are not lawyers."); *Poole v. Budd Co.*, 706 F.2d 181, 185 (6th Cir. 1983) ("Union representatives are not to be strictly held to the standards of attorneys.").

"[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67

---

[2] Having found that no genuine issue of material fact exists whether GE breached the terms of the CBA, Deats' Section 301 claim must fail on the whole.  *See White*, 899 F.2d at 559 ("[I]f the first claim anchored in the employer's alleged breach of the collective bargaining agreement fails, then the breach of duty of fair representation claim against the union must necessarily fail with it.").  Nonetheless, in the interest of completeness, the Court will proceed to address Deats' claim against the Union.

Page 9 of 14

(1991) (citation omitted) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). Mere negligence on the part of the union will not suffice, *Garrison*, 334 F.3d at 538 (citing *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372-73, 376 (1990)), nor will ordinary mistakes, errors, or flaws in judgment, *id.* (citing *Walk v. P*E*I* Nationwide, Inc.*, 958 F.2d 1323, 1326 (6th Cir. 1992)). "[A]n unwise or even an unconsidered decision by the union is not necessarily an irrational decision." *Id.* (quoting *Walk*, 958 F.2d at 1326). Instead, a plaintiff must show that the union's actions were "wholly irrational," *O'Neill*, 499 U.S. at 78, which this Circuit has described in terms of "extreme arbitrariness," *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 586 (6th Cir. 1994); *see also Garrison*, 334 F.3d at 539. And while a union's duty includes undertaking a "reasonable investigation," *Black*, 15 F.3d at 585, that duty "does not require a union to exhaust every theoretically available procedure simply on the demand of a union member," *St. Clair v. Local Union No. 515 of the Int'l Bhd. of Teamsters*, 422 F.2d 128, 130 (6th Cir. 1969) (citing *Vaca*, 386 U.S. at 192).

To show "discriminatory" conduct sufficient to establish a breach of the union's duty, a plaintiff must come forward with "substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n of Street, Electric Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971); *see also Burkholder v. United Auto. Aerospace & Agric. Implement Workers of Am., Local No. 12*, 700 F. Supp. 2d 895, 907 (N.D. Ohio 2010).

"Bad faith" has been characterized by this Circuit as actions lacking "complete good faith and honesty of purpose in the exercise of its discretion." *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1355 (6th Cir. 1989) (quoting *Hines v. Anchor Motor*

Page 10 of 14

*Freight, Inc.*, 424 U.S. 554, 564 (1976)). To demonstrate bad faith, a plaintiff must come forward with "evidence of fraud, deceitful action, or dishonest conduct." *Summers*, 133 F. App'x at 253 (citing *Humphrey v. Moore*, 375 U.S. 335, 348 (1964)).

Merely characterizing a union's actions as arbitrary, discriminatory, or in bad faith "is insufficient to withstand summary judgment." *Summers*, 133 F. App'x at 253. Instead, to meet his burden of proof, "a plaintiff must establish by *substantial evidence* that the union acted arbitrarily, discriminatorily, or with bad faith." *Id.* (emphasis added).

Deats begins by acknowledging that he must present substantial evidence that the Union acted arbitrarily, discriminatorily, or with bad faith to establish a breach of the Union's duty; he insists, however, that to overcome summary judgment he must merely come forward with evidence that "presents a sufficient disagreement" whether the Union acted arbitrarily, discriminatorily, or with bad faith. (Docket No. 52, at 20.) Deats' proposition in this regard is incorrect and contrary to the law of this Circuit. As the Sixth Circuit stated in *Summers v. Keebler Co.*:

> Merely characterizing a union's conduct as arbitrary, perfunctory or demonstrative of bad faith is insufficient to withstand summary judgment. Rather, to meet his burden of proof as to the union's breach of its duty of fair representation, a plaintiff must establish by substantial evidence that the union acted arbitrarily, discriminatorily, or with bad faith.

133 F. App'x at 253 (alteration, internal quotation marks, and citations omitted).

Deats sets out essentially two lines of argument why the Union breached its duty to fairly represent him. First, he alleges that the Union breached its duty by failing to proceed to arbitration on his case, despite initially doing so on his coworker Lowe's case for defacing company property. Second, he asserts, by way of his affidavit, that he had a

verbal altercation with Carney, the Union's president, some two years' prior to his termination, during which Carney became angry with him and threatened, "[D]on't you ever come down to the Union Hall needin' my help!" (Docket No. 52-4, at 5-6.) Neither argument puts forth the "substantial evidence that the union acted arbitrarily, discriminatorily, or with bad faith" necessary "to withstand summary judgment." *See Summers*, 133 F. App'x at 253.

In regard to his first line of argument, Deats reasons that discriminatory conduct is shown where the Union initially pursued arbitration of Lowe's case even though the Union subsequently decided not to proceed to arbitration. In his deposition, Carney explained that the decision to drop arbitration of Lowe's case was based on the Union's having learned that Lowe had not fulfilled Lowe's end of a proposed agreement with GE whereby Lowe would admit to the graffiti and, in return, GE would agree not to terminate him. (*See* Docket No. 52-3, at 7.) Carney further testified that he was unaware that Deats had filed suit at the time the decision was made to drop Lowe's arbitration. (Docket No. 52-3, at 7.) Regardless, even in viewing these facts and drawing all reasonable inferences from them in a light most favorable to Deats, the Court finds that this allegation simply does not amount to substantial evidence that the Union acted discriminatorily against him. *See Summers*, 133 F. App'x at 253; *see also Burkholder*, 700 F. Supp. 2d at 907 (citing *Humphrey*, 375 U.S. at 349-50) ("A union does not breach its duty of fair representation simply because it takes a position adverse to the interests of some members while benefitting others."). Moreover, this conclusory allegation certainly does not constitute substantial evidence of "intentional, severe" discrimination that is "unrelated to legitimate union objectives." *See Lockridge*, 403 U.S. at 301; *Burkholder*, 700 F. Supp. 2d at 907.

In his second line of argument, Deats' insists that his prior run-in with Carney "describe[s] motive for his arbitrary, discriminatory and bad faith treatment by the Union." (Docket No. 52, at 21.) But again, even construing these allegations as true and drawing all reasonable inferences therefrom, the Court finds that Deats has not met his burden of coming forward with substantial evidence. These conclusory allegations regarding events occurring almost two years prior do not constitute substantial evidence that the Union's conduct in pursuing Deats' grievance through each step of the three-step process but deciding, in its discretion, not to pursue arbitration, "was so far outside a 'wide range of reasonableness,' as to be irrational." *See O'Neill*, 499 U.S. at 67. Nor do these allegations establish evidence of either "fraud, deceitful action, or dishonest conduct," *see Summers*, 133 F. App'x at 253, or "intentional, severe" discrimination that is "unrelated to legitimate union objectives," *see Lockridge*, 403 U.S. at 301; *Burkholder*, 700 F. Supp. 2d at 907.

Accordingly, Deats has not come forward with substantial evidence sufficient to withstand summary judgment showing that the Union's conduct was arbitrary, discriminatory, or in bad faith. Therefore, the Court will GRANT the Union summary judgment on Deats' claim against it for breach of the duty of fair representation.[3]

---

[3] In the converse to footnote 2, *supra*, the Court notes that even if Deats' claim against GE for breach of terms of the CBA could proceed, his Section 301 claim nevertheless would fail along with his claim against the Union. *See Lucas*, 738 F. Supp. at 220 ("Since plaintiff's count as to the duty of fair representation fails, plaintiff's other count alleging a breach of the CBA also must fail."); *cf. White*, 899 F.2d at 559.

CONCLUSION

For the foregoing reasons, the Court will GRANT Defendants GE and the Union's respective Motions for Summary Judgment. (Docket Nos. 50 & 51.) An appropriate Order of dismissal will issue concurrently with this Opinion.


Date:



cc: Counsel